Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )    NO. CR 23-00428 JST |
| | ) |
| JASBIR S. THANDI, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Oakland, California
Friday, July 18, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        CRAIG H. MISSAKIAN
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  BY:  **DAVID WARD**
      **EVAN MATEER**
      **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
        COBLENTZ, PATCH DUFFY & BASS
        One Montgomery Street - Suite 3000
        San Francisco, California  94104
  BY:  **MARCIA V. VALENTE, ATTORNEY AT LAW**
      **RACHEL S. SUHR, ATTORNEY AT LAW**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                U.S. District Court - Official Reporter

**Friday - July 18, 2025**                              **10:07 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE CLERK:**  Calling criminal case number 23-428-JST-1, United States of America versus Jasbir S. Thandi.

Parties, please state your appearances beginning with the Government.

**MR. WARD:**  Good morning, Your Honor, it is David Ward and Evan Mateer for the United States.

**THE COURT:**  Good morning, gentlemen.

**MS. VALENTE:**  Good morning, Your Honor, Marcia Valente and Rachel Suhr on behalf of Defendant.

**THE COURT:**  Good morning.  The record will reflect that Mr. Thandi is also here in court.  Good morning, Mr. Thandi.

**THE DEFENDANT:**  Good morning, sir.

**THE COURT:**  Am I pronouncing Mr. Thandi's name correctly?

**THE DEFENDANT:**  Yes, sir.

**THE COURT:**  The matter is on calendar for a change of plea.  Ms. Valente, is it still Mr. Thandi's wish to change his plea?

**MS. VALENTE:**  Yes, it is, Your Honor.

**THE COURT:**  Mr. Thandi, we are going to have a hearing this morning about your change of plea.  The point of the

hearing is not to make a record about what's in the plea agreement or what the terms of your plea are. I have a copy of that in writing. So, we don't need to make a record of that.

There are two main purposes of this hearing. The first is I want to make sure that you read the plea agreement; that you understand it; that you think it's a good deal for you; that you know what rights you are giving up; you know what you are getting out of the plea agreement, all that sort of thing.

The second thing I want to make sure is that you did the conduct. I want to make sure that you actually committed the crime that you are pleading guilty to. And you may think, well, that's a weird purpose because why would I be pleading guilty if I didn't do the crime? And the reason I say that -- the reason I ask people that is: Every once in a while when I'm going through one of these hearings, somebody will say -- I will get to that part of the hearing and someone will say "Well, I'm not guilty." And I think, well, they must have felt like they were under pressure to admit it. But I say, if you don't think you're guilty, you should have a trial. I'm not going to take a guilty plea from someone who doesn't think they are guilty.

So, those are the two main purposes of the hearing. Given that, it's really important that you be able to see and hear and understand everything that happens in court this morning.

So, if there is any time when you don't hear something

that somebody said, would you please interrupt me or have

Ms. Valente interrupt me so I can make sure it's repeated?

      **THE DEFENDANT:** Okay, sir, I will.

      **THE COURT:** Could you move the microphone down a

little bit?

      **THE DEFENDANT:** Okay, sir, I will.

      **THE COURT:** Very good. Thank you. And if you --

similarly, if you don't understand something somebody says --

either because they didn't say it clearly or they said it

clearly but you don't know what the words mean -- would you

interrupt me or have Ms. Valente do that?

      **THE DEFENDANT:** Okay, sir, I will do it.

      **THE COURT:** And the last thing just for you to bear in

mind is if you ever need to talk to your lawyers while we are

in the middle of the hearing, you have the absolute right to do

that. You don't need to give me a reason. In fact, I don't

want to know the reason.

    All you have to do is say, "Judge, I want to talk to my

lawyer." And then you and your lawyers can step away from the

microphone. You can speak as long as you need to, and we won't

get going again until you are ready. Does that all sound okay?

      **THE DEFENDANT:** Thank you, sir.

      **THE COURT:** Okay. Mr. Thandi, would you raise your

right hand, please.

\\\

1          **<u>JASBIR THANDI</u>**,

2    having been duly sworn, testified as follows:

3          **THE COURT:**  Do you understand you are now under oath;

4    and if you were to answer any of questions falsely, your

5    answers could later be used against you in a prosecution for

6    perjury or making a false statement?

7          **THE DEFENDANT:**  Yes, sir, I do.

8          **THE COURT:**  Will you say your full name, please.

9          **THE DEFENDANT:**  Jasbir Thandi.

10         **THE COURT:**  Mr. Thandi, where were you born?

11         **THE DEFENDANT:**  In Panjaur, India.

12         **THE COURT:**  Are you a citizen of the United States.

13         **THE DEFENDANT:**  Yes, sir.

14         **THE COURT:**  What -- and how old are you?

15         **THE DEFENDANT:**  Oh, 69, sir.

16         **THE COURT:**  How far did you go in school?

17         **THE DEFENDANT:**  You call it high school.  Here is

18   different, sir.

19         **THE COURT:**  I see.  It would be the equivalent of high

20   school here in the United States?

21         **THE DEFENDANT:**  No, sir, a little less than that.

22         **THE COURT:**  I see.

23         **THE DEFENDANT:**  Yes, less than that.

24         **THE COURT:**  How is your reading and writing?

25         **THE DEFENDANT:**  Pretty good.  I do understand pretty

1  good.

2         THE COURT:  Okay.  Have you been treated recently for

3  any mental health issues or addiction to alcohol or drugs of

4  any kind?

5         THE DEFENDANT:  No, sir, not for mental health but for

6  other health, yes.

7         THE COURT:  Okay.  Physical health?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  Are you right now under the influence of

10  any drug, medication or alcohol?

11         THE DEFENDANT:  I do take drugs, yeah.  I got

12  prescription drugs.

13         THE COURT:  Sure.

14         THE DEFENDANT:  I take every day, yes, sir.

15         THE COURT:  Do those interfere with your ability to

16  understand the proceedings?

17         THE DEFENDANT:  No, sir, I don't think so.  Yeah, I

18  can -- I understand everything.

19         THE COURT:  Okay.  I want to ask you, Mr. Thandi,

20  about a couple of documents.  The first one is called the

21  information.  I'll hold it up.  I hope it looks familiar to

22  you.  Did you get a copy of this at some point?

23         THE DEFENDANT:  Yes, sir, I did.

24         THE COURT:  Okay.  This is the most recent charging

25  document in the case.  This is just the document that states

1  the written charges against you.  Have you had an opportunity

2  to discuss the information, the evidence in the case, and the

3  case in general with Ms. Valente -- and I think I saw Mr. Crudo

4  at some point -- and Ms. Suhr?  Have you had a chance to talk

5  about the case with your lawyers?

6            **THE DEFENDANT:**  Yes, sir, I did.

7            **THE COURT:**  And have you had enough time to do that?

8            **THE DEFENDANT:**  Yes, sir.

9            **THE COURT:**  Did they do a good job of explaining what

10 your options were to you?

11           **THE DEFENDANT:**  Yes, sir.

12           **THE COURT:**  Have you been fully satisfied with the

13 counsel, representation and advice that your lawyers have given

14 you?

15           **THE DEFENDANT:**  Yes, sir, I do.

16           **THE COURT:**  I also wanted to ask you about the plea

17 agreement.  I don't know if you can see that from there, but I

18 will hold that up too.  This is the plea agreement in the case.

19 Did you have an opportunity to read and discuss the plea

20 agreement with your lawyers before this morning?

21           **THE DEFENDANT:**  Yes, sir.

22           **THE COURT:**  Is there a signed copy in court?

23           **MR. WARD:**  Your Honor, I have a signed copy right

24 here.

25           **THE COURT:**  All right.

```
 1                    (Pause in proceedings.)

 2           THE COURT:  Mr. Thandi, the Prosecutor just handed me

 3   a signed copy of the plea agreement.  I'm going to turn to the

 4   last page, which is page 11, and there are three blue ink or

 5   three wet ink signatures on that page.  Toward the top of the

 6   page your name is printed and then there is a blue ink

 7   signature above your name.  Is that your signature?

 8           THE DEFENDANT:  Yes, sir, this is my signature.

 9           THE COURT:  Did you put your signature on the plea

10   agreement in court this morning?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Is every promise the Government made to

13   you contained in this plea agreement?

14           THE DEFENDANT:  Yes, Your Honor, yes.

15           THE COURT:  Okay.  There are no side deals, in other

16   words?

17           THE DEFENDANT:  No, no, sir.

18           THE COURT:  Ms. Shoblo, let me hand the original back

19   to you, please.

20                    (Pause in proceedings.)

21           THE COURT:  Do you understand the terms of the plea

22   agreement?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Has anybody threatened you or somebody

25   close to you to persuade you to change your plea?
```

1          **THE DEFENDANT:**  No, sir.

2          **THE COURT:**  There are two main kinds of plea agreement

3     in the federal court.  This kind -- under this kind, the way it

4     works is as follows:  If you plead guilty this morning, as you

5     are proposing to do, I will find you guilty of the crimes that

6     you plead guilty to; and then we will put it off for sentencing

7     at a later date.

8          On that date the parties will make recommendations to me

9     as to what the sentence should be, and Probation will make a

10    recommendation; but I am not bound to impose any particular

11    sentence.

12         I can impose whatever sentence I feel is fair and just

13    under the law, and you would have to serve that sentence even

14    if it was higher than any sentence you thought you were going

15    to get or higher than any estimate that your lawyers have given

16    you.  You would not be able to withdraw your guilty plea.  Do

17    you understand that?

18         **THE DEFENDANT:**  Yes, sir, I do.

19         **THE COURT:**  Mr. Thandi, do you understand that the

20    offenses to which you are pleading guilty to this morning are

21    felonies and that if I accept your plea, you will be found

22    guilty of those felonies and that that adjudication might

23    deprive you of valuable civil rights; such as, the right to

24    vote, the right to hold any kind of public office, the right to

25    serve on a jury and the right to possess a firearm?

1          **THE DEFENDANT:**  Yes, sir, I do.

2          **THE COURT:**  Mr. Ward or Mr. Mateer, would one of you

3  please state the maximum possible penalties provided by law and

4  any mandatory minimum penalty?

5          **MR. WARD:**  Your Honor, the Defendant is charged by

6  information with two counts of violating 18 United States Code

7  Section 371.  Maximum penalties for each count are five years

8  in prison, a $250,000 fine, $100 special assessment, three

9  years of supervised release, restitution and potential

10  forfeiture.

11          **THE COURT:**  Mr. Thandi, have you understood the

12  hearing so far?

13          **THE DEFENDANT:**  Yes, sir, I do.

14          **THE COURT:**  I want to talk a little bit more about

15  sentencing and how that works.

16      There are two main components to or two main, I guess,

17  components to any sentence that a federal judge imposes.  The

18  first one is called the sentencing guidelines.  The sentencing

19  guidelines are proposed sentences published by the federal

20  government every year, and they give a proposed sentence for

21  every federal crime.  The more serious the crime, the higher

22  the recommended sentence.  The less serious the crime, the

23  lower the recommended sentence.  Also, for the same crime for a

24  Defendant that has a long criminal history, a proposed sentence

25  will be higher.  And for a Defendant that doesn't have a

criminal history or has a lower criminal history, the proposed sentence will be lower.

There are a lot of federal crimes. So, the sentencing guidelines get published every year in a big book. It looks like this (indicating). I am required to start by figuring out what the recommended sentencing guideline sentence is in your case or any case that I handle, but that's not the end of it.

I'm not required to impose the sentencing guideline sentence. Once I figure out what the sentencing guideline sentence is, then I need to look at a whole bunch of factors in a law called Section 3553(a), and the factors are things like your personality and background, whether there are any victims in the case, how serious the conduct was, how other people who did the same crime have been sentenced in other courts because we want people that are in similar situations to be treated similarly and many other factors that go into having a good sentence. Have you talked with your lawyers about the sentencing guidelines?

     **THE DEFENDANT:** Yes, sir, I did.

     **THE COURT:** And have you talked to them about these other sentencing factors that I need to look at in determining a fair sentence?

     **THE DEFENDANT:** Yes, sir.

     **THE COURT:** Do you understand that once I have looked at these sentencing factors, I can impose a sentence that's

1  higher or lower than a guideline sentence?

2        **THE DEFENDANT:**  Yes, Your Honor.

3        **THE COURT:**  Ordinarily you would have your right to

4  appeal your conviction if you're convicted in a federal court.

5  You could also appeal your sentence.  Sometimes there are other

6  orders that the court might have made -- a judge might have

7  made that you can also appeal.

8        But in this plea agreement in paragraph 4, you are giving

9  up your right to appeal your conviction, to appeal your

10  sentence, to appeal any other orders that the Court might have

11  made except you could claim that your lawyer was not effective

12  or you could appeal if I imposed a sentence that was greater

13  than the maximum allowed by law under the statute.  Do you

14  understand with those exceptions, you are giving up your right

15  to appeal?

16        **THE DEFENDANT:**  Yes, sir.

17        **THE COURT:**  There's something else you'll see in the

18  plea agreement called collateral attack.  Collateral attack

19  works very similarly to an appeal.  In a collateral attack the

20  Defendant files paperwork with a court saying that I -- or

21  another judge in our court -- made a legal error in something

22  they did in your case that injured your rights in some way and

23  that because of that, your conviction should be set aside or

24  your sentence should be set aside or some other order of the

25  Court should be set aside.  But with the same exceptions that I

1   just talked about, you are giving up your right to do

2   collateral attack.  Do you understand that?

3           **THE DEFENDANT:**  Yes, sir, I do.

4           **THE COURT:**  You have many other rights as a criminal

5   Defendant.  I'm not going to stop after each one, but I want to

6   go through them because they are really important; and these

7   are rights that make our system of justice, I think, fairer

8   than the systems that don't have these rights.

9       You have the right to plead not guilty to any crime

10  charged against you and to persist in that plea.  "Persist"

11  just means you never have to change your plea.  You never have

12  to say "I'm guilty."

13      You have the right to a trial by jury.  At the trial you

14  would be presumed to be innocent and the Government would have

15  to prove your guilt beyond a reasonable doubt.  What that means

16  is you would not have to prove anything or say anything.  You

17  could just stand by, keep pleading not guilty and see if the

18  Government had enough evidence to prove its case.

19      You would have the right to the assistance of a lawyer for

20  your defense.  And if you needed us to, we would appoint a

21  lawyer for you, not just for the trial but for every other

22  stage of the case.  You have a right to see and hear all the

23  witnesses against you and have them cross-examined in your

24  defense.

25      You have the right to decline to testify.  You can say "I

1  don't want to testify," and nobody could make you testify.   The

2  Prosecutor can't call you.   Even your own lawyers couldn't call

3  you.   You would be the only person that could make that

4  decision to testify.

5      And I said you don't have to put on any evidence, that's

6  true.   But if you wanted to put on evidence, you could use the

7  Court's subpoena power to make people come into court and

8  testify for you; and you could make them bring in documents or

9  other evidence you wanted the jury to see.

10      Lastly, let's say you didn't testify or let's say you

11  didn't put on any evidence.   Nobody could say anything about

12  that, okay.   Mr. Mateer couldn't say "and Mr. Thandi was there.

13  Why doesn't he testify and tell us what his side of the story

14  was;" okay.   And Mr. Ward couldn't say, "Where is Mr. Thandi's

15  evidence?   You saw our evidence.   What does he have?"

16      Because if they did that, it would make it seem like you

17  have some obligation to testify, which you don't, or you have

18  some obligation to prove something, which you don't.

19      Do you understand you have all these rights?

20          **THE DEFENDANT:**  Yes, sir, I do understand, sir.

21      **THE COURT:**  Do you understand if you plead guilty in

22  court this morning, you are waiving or giving up those rights

23  and we are not going to have a trial?

24          **THE DEFENDANT:**  Yes, Your Honor.

25          **THE COURT:**  You are proposing -- actually, let me take

1    a quick look at this information.

2                      (Pause in proceedings.)

3          **THE COURT:**  You are proposing to plead guilty to

4    Counts One and Two, which are all of the counts, in the most

5    recently filed information.  And those counts charge you with

6    conspiracy to commit insurance fraud in violation of Title 18

7    United States Code Section 371.

8         If you didn't plead guilty, the Government would have to

9    put on evidence to convince a jury; and they would have to

10    prove three things.

11         First, they would have to prove that there was an

12    agreement between two or more people to commit the crime of

13    insurance fraud, which is the crime charged in the information.

14         Secondly, that you joined that conspiracy or became a

15    member of the conspiracy knowing what the object of the

16    conspiracy was and intending to help accomplish that object.

17         And, thirdly, they would have to prove that one of the

18    members of the conspiracy, you or someone else, did at least

19    one overt act -- did at least one thing for the purpose of

20    carrying out the conspiracy.

21         Do you understand that if you didn't plead guilty, the

22    Government would have to prove those three things?

23          **THE DEFENDANT:**  Yes, Your Honor.

24          **THE COURT:**  Do you understand if you plead guilty in

25    court this morning, you will have admitted all three of those

1    elements and you won't have to -- they won't have to prove

2    anything?

3              THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  Paragraph 2 is very long, so I'm not going

5    to read the whole thing out loud although the Government

6    chooses sometimes to do it.  Let's just do it this way.  Did

7    you -- I know you told me earlier that you read the plea

8    agreement.  Did you read paragraph 2 carefully?

9              THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  It says a lot of the things in there about

11   what you did with Global Century Insurance Brokers and Global

12   Hawk Risk Retention Group and Houston General.  Is everything

13   that it says in paragraph 2 about you and what you did and what

14   you were aware of and what your goals were, is all of that true

15   and correct?

16              THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  There are certain dollar figures that are

18   set forth in paragraph 2.  I will give you an example; okay.

19   At the bottom of page 3, there is a paragraph that says (as

20   read:) "I admit that in or about August 2016 I obtained a

21   $6.4 million line of credit on behalf of Global Hawk and that

22   in doing so, I falsely represented to the lender that Global

23   Hawk's board of directors had authorized this line of credit.

24   I admit that I further increased this line of credit to

25   $14 million again through my false representations to the

lender that this increase had been authorized by Global Hawk's board of directors."

"I admit that I misappropriated more than $1.5 million of these funds for personal use including on a house and a luxury vehicle. I admit that in or about March 2017, I applied for a second line of credit in the name of Global Hawk in the amount of $14,750,000; and I admit that I again misrepresented to the lender that this line of credit had been authorized by Global Hawk's board of directors." And then the paragraph continues.

Here is my question to you: All of the paragraphs or most of the paragraphs in section 2 of the plea agreement use very specific dollar figures. Do you understand that when it comes time to impose a sentence in this case, I might rely on those dollar figures to establish the gain that you received, or the amount of harm to a victim and that these dollar figures could be significant under a sentencing guidelines? Do you understand that?

**THE DEFENDANT:** Yes, I do, sir.

**THE COURT:** Will the Government make a representation please concerning the facts the Government would be prepared to prove at trial to establish an independent factual basis for this plea?

**MR. WARD:** Yes, Your Honor. The Government would be prepared to prove every fact in paragraph 2. I will not read the entire paragraph 2, but the Government would prove that in

1    around 2005 Mr. Thandi formed an insurance brokerage called

2    Global Century, and then around 2009 he established a company

3    called the Global Hawk Risk Retention Group.

4        That company -- while Mr. Thandi was based here, that

5    company is domiciled in Vermont.  And what that means is that

6    it is regulated by insurance regulators in Vermont.

7        As part of that regulation, Global Hawk was required to

8    file quarterly and annual statements with the Vermont

9    regulators.  It is called the Vermont Department of Financial

10   Regulation.

11       The Government would prove that beginning around May of

12   2018, Mr. Thandi and his coconspirators began filing false

13   statements with the Vermont regulators that overstated the

14   amount of reserves and capital that the company held.  There is

15   a minimum capitalization and reserve requirement that the

16   company had to meet.  They were not able to meet it.  They

17   filed false and misleading financial statements including bank

18   records and other financial documents.

19       The Government would prove that Mr. Thandi and his

20   co-conspirators intended to deceive the Vermont Department of

21   Financial Regulation into believing that Global Hawk had more

22   money than it did.

23       The Government would prove that these false statements

24   were highly material to the Vermont Department of Financial

25   Regulation.  And had they known that Global Hawk, in fact, did

not have these reserves, their insurance business license would have been suspended or revoked.

The Government would further prove as part of the conspiracy, Mr. Thandi was using Global Hawk money to buy and sell stocks and that those funds that he was trading stocks in were funds he was not allowed to trade because those were reserves that Global Hawk needed to hold to cover future losses or insurance claims.

We would prove that Mr. Thandi knowingly and intentionally misappropriated these funds, and one -- the Government would prove that one of the purposes of the scheme was to conceal that misappropriation and misuse of the money.

The Government would prove that among the moneys that were misappropriated, Mr. Thandi used over 1.5 million of that for personal use including buying a house and a luxury vehicle.

The Government would prove all the paragraphs regarding the bank loans that the Court just reviewed with Mr. Thandi.

And the Government would prove in May of 2020 when the regulators discovered the misappropriation and the fraud, that Global Hawk collapsed and was put into receivership and dissolved.  That is Count One.

Count Two relates to another insurance company called Houston General.  That company is domiciled in Texas.  And, as the Vermont insurance company was regulated in Vermont, the Houston General is regulated by Texas insurance regulators.

1    And the Government would prove that Mr. Thandi conspiring

2    with his co-conspirators -- Mr. Sahota, Mr. Padda and

3    Mr. Aggarwal created false and fraudulent bank and brokerage

4    records that misrepresented the amount of funds that Houston

5    General held and that those statements -- and they did so with

6    the intent to deceive the Texas insurance regulators, and that

7    those false statements were material to the Texas regulators

8    because they needed to make sure that these companies were

9    adequately capitalized to cover losses and other expenses.

10    We would also prove that in summer of 2020 shortly after

11    Global Hawk collapsed, Houston General also collapsed and was

12    put into receivership.

13    **THE COURT:**  Thank you.

14    **MR. WARD:**  Thank you.

15    (Pause in proceedings.)

16    **THE COURT:**  Mr. Thandi, are you ready to change your

17    plea?  Are you ready to go forward with changing your plea?

18    (Pause in proceedings.)

19    **THE DEFENDANT:**  Yes, sir, I want to guilty plea.

20    **THE COURT:**  All right.  I'm going to ask you

21    separately for each count just so we have a clear record.

22    In the matter of the United States of America versus

23    Jasbir Thandi to Count One of the information, which charges

24    you with conspiracy to commit insurance fraud in violation of

25    Title 18, United States Code Section 371, how do you plead?

1          **THE DEFENDANT:**  Guilty, sir.

2          **THE COURT:**  To Count Two of the same information,

3    which, again, charges you with conspiracy to commit insurance

4    fraud, how do you plead?

5          **THE DEFENDANT:**  Guilty, sir.

6          **THE COURT:**  I accept that plea.  I find that you are

7    fully competent and capable of entering an informed plea; that

8    you are aware of the nature of the charges against you and the

9    consequences of your plea; and that your guilty plea is a

10   knowing and voluntary plea supported by an independent basis in

11   fact containing each of the essential elements of the offense.

12   I, therefore, accept your plea and I find you guilty of Counts

13   One and Two.

14        What's going to happen now is I'm going to refer the case

15   to the Probation Office, and they are going to prepare

16   something called a pre-sentence report -- a written

17   pre-sentence report.

18        That's going to help me in imposing a fair sentence in the

19   case.  They are going to want to talk to you when they prepare

20   that report, and you are entitled to have your lawyers with you

21   any time you are talking with them.  It's really important that

22   you are candid and prompt when you are dealing with Probation

23   because that pre-sentence report is so important.

24        You will get a copy of it in draft before I ever see it,

25   and the Prosecutors will get a copy in draft.  If there is

1  anything in the report that's missing or wrong, your lawyers

2  will have a chance to talk to the Probation Office and ask them

3  to fix it.

4      If there are any disputes about what's in the pre-sentence

5  report that don't get resolved informally, I will resolve those

6  disputes at your sentencing hearing; but most of the time there

7  aren't any disputes left.  The parties are just able to work

8  that out.

9      When we have our sentencing hearing, the victims of the

10 crime can speak if they want to.  You will have an opportunity

11 to speak if you want to.  You don't have to speak.  You can let

12 your lawyers do all the talking, and you can make your decision

13 then about what you want to do.

14     The lawyers also will have a chance to talk to the Court.

15 And if they are making different recommendations about what the

16 sentence should be or even if they are making the same

17 recommendation, actually, they will have a chance to tell the

18 Court why one sentence is the right sentence and not the other.

19     You are at liberty now, which means you are not in

20 custody.  It would be the Court's indicated ruling that

21 Mr. Thandi remain out of custody pending sentencing.  Does the

22 Government want to be heard?

23          **MR. WARD:**  No objection to that, Your Honor.

24          **THE COURT:**  So, you will just remain out of custody.

25 That will be on the same terms and conditions that you have

1   been out of custody so far.  So, those were imposed by the

2   magistrate judge.  Those same terms and conditions will just

3   remain in effect.  Ms. Shoblo, would you like to suggest a

4   sentencing date, please?

5        **MR. WARD:**  Your Honor, before we do that, the

6   Government would like to discuss one issue.

7        **THE COURT:**  Sure.

8        **MR. WARD:**  In this case as part of the plea,

9   Mr. Thandi has agreed to make a pretty significant restitution

10  payment prior to sentencing.  We believe that there will be a

11  loss of over 21 million, and we would like to address the Court

12  on the issue of restitution.  We would like the Court to make a

13  finding on what restitution should be and more importantly how

14  restitution is going to be distributed in this case because you

15  have two insurance companies that have collapsed.  You are

16  going to have a lot of victims.

17       The Government has spent a significant amount of time

18  thinking about how best to do this and how to get the money in

19  an equitable way to the victims.

20       What we would like to do and what we would propose is that

21  we file a proposed restitution order and process with the Court

22  and perhaps hold a hearing so the Court can understand how the

23  restitution will be distributed and can then issue its

24  restitution order in a way that's clear.

25       For example, in Vermont when Global Hawk collapsed, the

1    company was taken over.  It was put into receivership.  The

2    Department of Financial Regulation appointed a receiver, these

3    two lawyers overseen by a court; and they have spent a lot of

4    time documenting loss.  And we think that having at least some

5    of the money go through them might be appropriate as part of

6    the overall restitution.  It's a little complicated, and we

7    would like to brief it; and we would like to do it before

8    sentencing if the Court is amenable to that.

9           THE COURT:  Makes sense.  I have some comments about

10   that or I will have in a second.  Does Defendant want to be

11   heard?

12          MS. VALENTE:  We don't have any objections to that

13   proposal.

14          THE COURT:  So, I have not been in this situation

15   before and I'm hearing this for the first time; but it occurs

16   to me that I need some self education -- and maybe the

17   Government can -- or I need education by the Government.  I'm

18   assuming that the amount of money that would be paid in

19   restitution will be far short of what would be necessary to

20   make all the victims whole.

21          MR. WARD:  Correct.

22          THE COURT:  So, the Court will be in a position --

23   potentially as part of its restitution order -- of explicitly

24   or impliedly resolving competing restitution claims.

25          MR. WARD:  The hope is that there is -- there will

1    have to be some of that, but the hope is that we can set up a

2    system that those claims can be adjudicated.  In Vermont, for

3    example, they have spent, like, a lot of time thinking and

4    adjudicating claims; and they are overseen by a superior court

5    judge in Vermont, so --

6              **THE COURT:**  What about Vermont versus Texas?

7              **MR. WARD:**  We think the loss is far greater in Vermont

8    than in Texas.

9              **THE COURT:**  But nonetheless, there are losses in

10   Texas.  Someone needs to make a decision about the proportion

11   of any recovered funds that go to Texas versus Vermont;

12   correct?

13             **MR. WARD:**  Correct.

14             **THE COURT:**  Well, I would like to be satisfied that I

15   know whatever rules or guidelines there are for federal judges

16   like myself to make sure that, A, anyone with a stake in the

17   restitution has an appropriate opportunity to be heard.  I'm

18   saying that at the highest level of generality.

19        So, for example, it may be that I'm under some obligation

20   or it would be a best practice for me or for the Court to

21   receive statements from any victim who wants to submit one.  It

22   could also be the case that there is notice and an opportunity

23   to be heard in a State proceeding in Vermont or Texas, and that

24   satisfies -- as a matter of process and as a matter of

25   equity -- the obligation for victims to be heard.  I don't

1    know.

2        But, A, I want to make sure that any victims who might

3    have the right to state a concern or make a proposal concerning

4    how restitution funds are allocated, have that right honored.

5        Secondly, I want to make sure that I'm aware of whatever

6    rules or guidelines, best practices there are regarding the

7    determination of any competing claims to the same money.

8        So, for example, based on what you have said, it might be

9    the case that the State court in Vermont has already figured

10   out a way to equitably and fairly allocate any restitution

11   money that is received in connection with the fraud that

12   happened in that State; but it would still be an open

13   question -- even if that were true -- how to allocate any funds

14   between Vermont and Texas.

15       And maybe these questions will turn out to be easy.  I

16   don't know.  So, for example, using -- addressing my last

17   hypothetical, perhaps the Court could simply look at the total

18   loss in Vermont and the total loss in Texas; and that would

19   establish a fraction or a ratio, and the Court could apply that

20   ratio to any funds that were received in restitution.  I'm not

21   saying that's how it should work.  I'm saying that's how it

22   could work.  I don't know, but I would like -- I would like to

23   proceed cautiously so that I do this in a fair way.

24       Another thing I would say is I try to do my work in a

25   reasonably prompt way.  And I have over 300 cases.  So, a fear

that I have in any situation like this is that if I don't get
briefing from the parties that gets me over the goal line and
gives me all the education I need, now the case goes into that
stack of work that somebody has to get to at some point in my
chambers.  And if we found ourselves there, that could really
slow things down because this is very important to me -- all my
cases are very important to me -- but it's not an emergency.

And so, I hope that the parties will be able to provide me
enough information that I do feel well educated and I can go
about the process of distributing this restitution money
fairly.

**MR. WARD:**  Thank you, Your Honor, and thank you for
the guidance.  It is helpful.  That's why we raised the issue
because it is complicated, and we want to give the Court
adequate time.

**THE COURT:**  I really appreciate the Government's
forethought, by the way, in bringing this up.

**MR. WARD:**  It's a complicated issue.  So, we would --
we will work together.  I think the starting point would be
filing things with the Court to explain what we know factually,
what the obligations of the Court are, what the obligations of
the Government, how things should be distributed.

A hearing on restitution may be appropriate if victims
want to be heard.  And we can research that.  And if we think
that's appropriate, we will propose that to the Court.  And,

1    again, our hope is that we would do this prior to sentencing.

2    So, at sentencing, the Court would have a restitution order as

3    part of the judgment.  Obviously, we defer to the Court on how

4    he wants to do it but I --

5            THE COURT:  I vastly prefer that.

6            MR. WARD:  -- think that makes more sense.

7            THE COURT:  I would like the actual act of sentencing

8    to be the last thing that happens in this case.  I very much do

9    not want to be -- even though it is customary for us to impose

10   sentence and if we have a restitution issue, to postpone it for

11   up to 90 days -- that's the garden variety case.  This is not

12   the garden variety case.  So, I wouldn't want to do it the way

13   I typically do it just because I wouldn't know what I was

14   getting into.  I would be imposing a sentence and then not

15   having any idea how much work remains to be done.  And I don't

16   like that idea.

17       So, I like what you are proposing, which is let's figure

18   out what a fair restitution mechanism is.  Let's hold whatever

19   hearings need to be held to resolve any disputes.  Let's

20   determine the amount of restitution.  And when we have done

21   that, then let's set a firm sentencing date that is for the

22   actual imposition of sentence.

23           MR. WARD:  The Government absolutely agrees.

24           THE COURT:  Do you have a timeline in mind?

25           MR. WARD:  Our target is sentencing around November.

1  Maybe we would file something in August.  And then if there

2  needed to be a hearing, we could do it in September.

3      **THE COURT:**  I would actually suggest this -- unless

4  the parties object or don't like the idea -- I would send this

5  to Probation for the preparation of a written sentence report

6  on their normal schedule, but I would not set the date for the

7  actual imposition of sentence now for a couple of reasons.

8      The first is we don't know yet what will be required to

9  determine appropriate restitution.  The second is a much more

10  human concern; and that is, sentencing is a big deal.  It is a

11  big deal for Mr. Thandi.  And I don't want to start creating in

12  people's minds the idea that this big thing is going to happen

13  on a particular date and then it turns out, we need to kick the

14  can down the road.  I just don't think psychologically that's

15  the best way of treating the Defendant or anybody else in the

16  case.

17      So, that would be my suggestion.  Let's send it to

18  Probation.  Let's get them going on a pre-sentence report so

19  it's ready when we are ready, but let's just figure -- let's

20  set restitution and when -- once we know what a likely date is

21  that we will have figured out restitution -- we don't have to

22  wait for that date to come.  I think we just need to know what

23  that date is -- then let's go ahead and set a sentencing date.

24  Again, that's not an order.  That's just a suggestion.

25      **MS. VALENTE:**  We are not opposed to that, Your Honor.

1          THE COURT:  Okay.

2          MR. WARD:  The Government agrees.

3          THE COURT:  Okay.  So, now I think we are looking at

4   the Government having discussions with the regulators or the

5   courts in Texas and Vermont; gathering that information and

6   then simultaneously or contemporaneously educating the Court

7   and apprising the Defendant of what you think a fair process is

8   for determining restitution -- and obviously this affects the

9   Defendant too, so the Defendant will be involved in those

10  discussions -- and it may even wind up being a joint brief.  I

11  don't know.  What is an appropriate next step?

12                    (Pause in proceedings.)

13         MR. WARD:  What about we set a date in early September

14  as a deadline for the Government to file either a motion for

15  restitution or stipulated motion; briefing to the Court.  And

16  then the Court can review it.  And if we need to have a

17  hearing, we can either in that briefing recommend to the Court

18  we should have a hearing and let the Court consider and set a

19  hearing.

20         THE COURT:  You know, it would be a very desirable

21  outcome for everybody -- and I would not want to engage in any

22  shortcuts to achieve this goal -- but I think it would be a

23  very desirable outcome for everybody if when that briefing came

24  in, it said -- it laid out exactly how restitution should be

25  paid out; you know, that there already was a -- that you-all

 1   had figured out because it was available a mechanism or a

 2   formula or a ratio that allowed for the Court to just issue an

 3   order.  Maybe there would need to be a hearing so anybody that

 4   objected to that could come forward.  But I'm starting to think

 5   about this -- again, I haven't had to think about this before.

 6   This is all off the cuff.

 7        I'm starting to think about this sort of how you think

 8   about a class action settlement in the civil context.  And what

 9   happens there -- as I'm sure the lawyers know but Mr. Thandi

10   may not know -- what happens there is, there is a claim made

11   against a company on behalf of a nationwide class or a

12   statewide class or whatever it is.  And there might be slightly

13   different injuries that different class members have suffered.

14        And so, the lawyers work out a formula that they think is

15   fair to allocate the settlement proceeds, and then the class

16   members are given notice of that settlement; and they are given

17   a certain amount of time to object.  And then the Court, when

18   it considers the settlement, also considers the objections; and

19   the lawyers have an opportunity to respond to the objections.

20        And then the Court has a hearing.  And the objectors will

21   have made their objections known in writing; but if they want

22   to show up by Zoom or come into court and make further

23   objection to the Court, they can do it.

24        And I'm not saying that that process works here but it

25   might.  And if it does, I think it would be the most efficient

1  way of handling it and potentially a fair way.

2  **MR. WARD:** That sounds good to the Government. We

3  want to -- the victims will have to be notified. We are in the

4  process of doing that. The Crime Victims Right Act provides

5  requirements and a mechanism. Then we can try to figure out a

6  proposed way to distribute the funds and notify everyone.

7  Their objections, we can take those in and then present

8  everything to the Court.

9  **THE COURT:** Ms. Valente?

10  **MS. VALENTE:** My only concern with regard to an early

11  September date is to the extent that there isn't a joint

12  stipulation or there's a time that we would need to respond to

13  the Government's briefing, I just want to make sure that

14  there's sufficient time in light of the fact that we are

15  already in July.

16  **THE COURT:** I think let's do this: Let's set a date

17  for the submission of a brief, but let's also set a status

18  conference within two or three weeks, something that allows the

19  Government to do some homework and see -- just confirm that the

20  Prosecutors feel like they are on the right path and that you

21  also feel that way, Ms. Valente.

22  **MS. VALENTE:** Okay.

23  **THE COURT:** That everyone feels like, hey, we are on

24  the right path towards figuring this out. We feel good about

25  the briefing deadline. I mean, I don't want the briefing

```
 1   deadline to be aspirational.  I want it to be real and that

 2   kind of thing.

 3        But if it turns out as you go along, you think it will

 4   take a little more time.  We have to build in a notice process,

 5   whatever it is.  So, we can sort of have our cake and eat it

 6   too.  And that is, we have deadlines that we are working

 7   toward; but we are checking in with each other periodically.

 8   This is not something that happens every Friday.  So, let's

 9   create more opportunities to check in with each other.  How

10   does that sound?

11        MS. VALENTE:  That seems fine, Your Honor.  Just at

12   this point in time, do you envision the briefing deadline to be

13   early September and then there would be a hearing scheduled

14   thereafter?

15        THE COURT:  I would say, you know, what I anticipate

16   would be a little strong in the sense that I don't know that I

17   have a clear anticipation of what will happen.  Just using the

18   class action settlement process -- civil class action

19   settlement process is an example.

20        What I would expect -- if we were going down that road,

21   the victims in this case would get notice.  I think it's good

22   for victims to have at least 45 to 60 days to object.  I don't

23   like telling victims you have a week or you have two weeks.  It

24   just -- you know, people -- it takes a while for people to

25   decide what they want to do.  So, if they have 45 to 60 days --
```

1  45 is fine if that's what you wind up doing, I think.

2      People are going to make objection.  So, that has to

3  happen.  And then -- and then to the extent that you or the

4  Government want to respond to those objections, you need time

5  to put those responses together.  And then all of that is

6  presented to the Court.

7      And then some time after that's presented to the Court --

8  which is not a long time.  It's a couple weeks after I get

9  it -- you have a hearing.  And anybody that wants to come in

10  and say their piece in addition to what they said in writing

11  can do that; and we would set up Zoom so that people wouldn't

12  have to fly across the country to be heard in the courtroom.

13                  (Pause in the proceedings.)

14      **THE COURT:**  And at that same hearing you would have

15  the opportunity to defend your own process.  You need to

16  provide for the possibility that the Defendant and the

17  Government feel differently about how there is going to be a

18  distribution; but I honestly don't think that's very likely.

19  So, I'm acknowledging it is possible.

20      I think the Government and the Defendant are going to be

21  holding hands on this.  Because the real issue -- if I'm the

22  Defendant -- is how much is the restitution.  I don't really

23  care that much about allocation.  So, both sides have a strong

24  interest in finality.

25      You don't want somebody filing an objection with the Ninth

 1  Circuit saying -- because they're not bound by the plea

 2  agreement.  You don't want someone filing an objection with the

 3  Ninth Circuit saying, well, this isn't fair.  I didn't get my

 4  share of the settlement, you know, whatever it is.  You just

 5  want a fair process that gives you finality.

 6           MS. VALENTE:  Okay.

 7           THE COURT:  So, let's go ahead -- let's set a briefing

 8  date so that we have something that we are working towards but

 9  then let's also set a status conference date.  I'm going to

10  wind up vacating my September 5th calendar because I have an

11  obligation to the court all day that I have to do, and I will

12  be out of town on September 12th.  I'm here on the 19th.  I'm

13  here on the 26th.  I'm here all of August and most of October.

14  It's up to you.

15                   (Pause in the proceedings.)

16           MR. WARD:  How about September 19th for the brief and

17  then you would -- sorry, was that --

18           THE COURT:  I was just giving you dates when I'm not

19  here.  I don't need to be here for you to file a brief.  You

20  can file a brief any day in September.  I don't stand there by

21  the mailbox waiting for them to come in.

22           MR. WARD:  We can -- let's set it a little earlier for

23  the --

24           MS. VALENTE:  Should we do the status conference

25  first?

1          **MR. WARD:**  We can do the status conference on the 29th

2    of August?

3          **MS. VALENTE:**  That's fine.

4          **THE COURT:**  That works fine for me and does for

5    Ms. Valente too.  So, we will set a status conference in this

6    case on August 29, 2025, at 9:30 a.m.

7          Honestly, I would excuse -- I would grant a motion to

8    excuse Mr. Thandi's presence.  I don't think anything of

9    constitutional significance is going to happen on August 29th.

10    And I note that he is in a wheelchair.

11          **MS. VALENTE:**  Thank you, Your Honor.

12          **THE COURT:**  All right.  Mr. Thandi, just for clarity,

13    at some point I'm going to set a sentencing date and you are

14    ordered to be personally present then just in case you are not

15    here when I set that order; but you don't need to come on

16    August 29th.

17          **THE DEFENDANT:**  Okay, Your Honor.

18          **THE COURT:**  You can if you want to though.  Okay.  So,

19    status conference August 29, which I guess is about six weeks

20    from today and then --

21          **MR. WARD:**  September 12th for the briefing.

22          **THE COURT:**  Okay.  And then the Government will file

23    what I will call its -- it's a motion really.  You are seeking

24    relief from a Court -- so, I would call it a motion for

25    restitution.  It will be due on September 12.  And I don't know

1  that the Defendant -- I don't think there is going to be any

2  opposition; but if there is, how about if we make that due

3  September 26th?

4       **MS. VALENTE:**  That's fine with us, Your Honor.

5       **THE COURT:**  Okay.  And then we will see each other in

6  August, and we can talk about then how things are shaking out

7  and what is likely to come in on the briefing and that sort of

8  thing.

9       **MS. VALENTE:**  That sounds good, Your Honor.

10      **MR. WARD:**  That sounds great, Your Honor.

11      **MS. VALENTE:**  There is just one point that I wanted to

12  talk to my client before we go off the record.

13      **THE COURT:**  Please.

14               (Pause in proceedings.)

15      **MS. VALENTE:**  Your Honor, I just wanted to clarify for

16  the record at the very beginning of the colloquy, you asked my

17  client a question about medical treatments and what he is being

18  treated for.  And he was able to testify today willingly and

19  voluntarily, but he did make a representation about not being

20  treated for mental health conditions.

21      **THE COURT:**  Yeah.

22      **MS. VALENTE:**  And I just want to make sure that it is

23  clarified that he is being treated for a variety of medical

24  conditions, and we have a copy of his medications if that would

25  be helpful for Your Honor.  But he didn't understand what falls

1  under the purview of mental health.

2      **THE COURT:** I see. My goal in asking those questions

3  always is to make sure that -- to use an old-fashioned

4  phrase -- someone is of sound mind --

5      **MS. VALENTE:** Yes.

6      **THE COURT:** -- while they are participating in a plea

7  hearing; that they are able to understand the proceedings fully

8  and that they are able to -- without any difficulty or

9  interference or confusion -- understand the Court's questions

10  and formulate answers to those questions.

11      I inferred from what Mr. Thandi said that he was not being

12  treated for any mental health issues; that he had been

13  prescribed medication for some medical issues, which I did not

14  ask about, but that although he was taking that medication, it

15  did not interfere in any way with his ability to understand the

16  proceedings. And so, I felt satisfied by that. I don't know

17  if that addresses your concern.

18      **MS. VALENTE:** It does. So, he is not being treated

19  for anything that impacts his ability to -- his sound mind, as

20  you phrased it. But I just didn't want there to be any

21  confusion with regard to the exclusion of certain health

22  conditions.

23      **THE COURT:** It was very clear to me from what he said

24  that he was under medication.

25      **MS. VALENTE:** Okay. I just wanted to make sure that

1    was clear on the record.

2        **THE COURT:**  I did not feel -- and the Government did

3    not ask me to pursue -- any more curiosity about the exact

4    nature of those medications.  Mr. Thandi appears to me this

5    morning to be quite clearly -- clear in his thinking and

6    speech.  And so, I felt that the record was adequate.

7        **MS. VALENTE:**  Thank you, Your Honor.

8        **THE COURT:**  Thank you.

9        **MR. WARD:**  Thank you, Your Honor.

10       **THE COURT:**  Court is in recess.

11            (Proceedings adjourned at 11:04 a.m.)

12                    ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6

7  DATE:   July 27, 2025

8

9

10

11        _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
           United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25